IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDRE SANCHEZ,

      Plaintiff,                          No. 2:11-cv-2993 AC

   vs.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.                      <u>ORDER</u>

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties' cross motions for summary judgment are pending. For the reasons discussed below, the court grants the Commissioner's motion and denies plaintiff's motion.

////

////

////

1

I.      BACKGROUND

Plaintiff applied for a period of disability, DIB and SSI on January 31, 2008, alleging disability beginning April 30, 2006. Administrative Record ("AR") 149, 158. Plaintiff's applications were initially denied on May 5, 2008, and upon reconsideration on September 12, 2008. AR 57-66, 69-78. On February 18, 2010, a hearing was held before administrative law judge (the "ALJ") Brenton Rogozen. AR 34-52. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert ("VE") testified. Id. In a decision dated April 7, 2010, the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Act.[1] AR 21-29. The ALJ made the following findings (citations to 20 C.F.R. omitted):

////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

     1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2007.

     2. The claimant has not engaged in substantial gainful activity since April 30, 2006, the alleged onset date.

     3. The claimant has the following severe impairments: Status Post Open Reduction Internal Fixation of the Right Ankle, Status Post Left Knee Surgery, Status Post Left Shoulder Dislocation Reconstruction.

...

     4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

     5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work in that the claimant would not be able to stand or walk for more than 2 hours in an 8 hour workday; and lift and carry no more than 10 pounds with the left arm and 20 pounds with the right. Additionally, the claimant would be restricted from any overhead work with the non-dominate [sic] left arm.

...

     6. The claimant does not have any past relevant work.

     7. The claimant was born [in] 1979 and was 26 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

     8. The claimant has a limited education and is able to communicate in English.

     9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

     10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

...

     11. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2006, through the date of this decision.

AR 23-28.

////

////

Plaintiff requested the Appeals Council review the ALJ's decision. AR 13. However, on June 29, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 5-7.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred in failing to (1) properly credit the opinion of plaintiff's treating physician, (2) properly credit plaintiff's testimony, and (3) ask the VE whether
his testimony was consistent with the Dictionary of Occupational Titles (DOT).

////

A.   The ALJ Provided Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinion.

Plaintiff argues the ALJ erred by failing to properly credit the opinion of his treating physician. Pl.'s Mot. Summ. J., ECF No. 16 at 10.[2] The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

Dr. Tran, plaintiff's treating physician, first began treating plaintiff on September 11, 2008. AR 309. On September 25, 2008, Dr. Tran completed a medical assessment of plaintiff's work-related functional limitations. AR 309-13. He found that plaintiff had suffered

---

[2] Citations to court documents refer to the page numbers assigned by the court's electronic docketing system and not those assigned by the parties.

1  a right ankle fracture, had staples in his left leg, and had undergone surgery to repair a dislocated
2  left shoulder. AR 311. Dr. Tran opined that plaintiff could never climb, kneel, push/pull, or
3  lift/carry up to 10 pounds; could occasionally balance, crouch, and crawl; frequently stoop and
4  handle; and continuously reach, feel, hear, and speak. AR 310, 312. In Dr. Tran's opinion,
5  plaintiff could never use his right hand for simple grasping, but would frequently be able to use
6  his left hand for simple grasping. AR 311. Dr. Tran further opined plaintiff could only
7  occasionally use both hands for fine manipulation. Id. Plaintiff's impairments would frequently
8  affect the use of his left foot and would continuously affect the use of his right foot. Id. Lastly,
9  Dr. Tran opined that plaintiff could sit for three hours, stand for two hours, and walk for one
10 hour in an eight-hour workday. Id.

11         On April 23, 2008, Dr. Maliheh Massih, an examining physician, conducted a
12 comprehensive orthopedic evaluation of plaintiff. AR 280-84. Dr. Massih observed that
13 plaintiff walked with a slight limp, but "was able to walk on his heels and toes without
14 difficulty." AR 282. Dr. Massih found that plaintiff's left shoulder "range of motion was
15 decreased with external rotation," but found that his right ankle range of motion was normal. Id.
16 Dr. Massih further found plaintiff's "lumbosacral alignment was normal, no deformity noted";
17 his motor strength was 5/5 throughout upper and lower extremities. Id. Dr. Massih diagnosed
18 status post right ankle compound fracture, status post left knee surgery, 2 centimeter leg length
19 discrepancy, and left shoulder instability status post surgical fixation. AR 283. Based on these
20 findings, Dr. Massih opined that plaintiff should be able to stand and walk about four to six
21 hours and sit without restriction in an eight-hour workday. Id. It was also Dr. Massih's opinion
22 that plaintiff should be able to frequently lift and carry 25 pounds with his left arm and 50
23 pounds with his right arm. Id. Lastly, Dr. Massih opined that plaintiff should have no other
24 postural or manipulative limitations, except for his somewhat limited ability to reach overhead
25 because of left shoulder instability. AR 284.
26 ////

6

In assessing the medical evidence, the ALJ gave significant weight to Dr. Massih's opinion and little weight to Dr. Tran's opinion. AR 27. Because Dr. Tran's opinion was contradicted by Dr. Massih's opinion, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Tran's treating opinion. See Lester, 81 F.3d at 830.

The ALJ provided two reasons for according minimal weight to Dr. Tran's medical opinion. First, the ALJ observed that while Dr. Tran was plaintiff's treating physician, at the time he rendered his opinion he had only been treating plaintiff "for approximately one month and therefore does not have [the] benefit of longitudinal perspective of [plaintiff's] impairments." AR 27. A treating physician's opinion is usually entitled to greater weight because a treating physician has a better opportunity to know and observe the patient. Smolen, 80 F.3d at 1985. In assessing what weight to give a treating physician's opinion, an ALJ may consider the length of the treating relationship and the frequency of examination. 20 C.F.R. § 404.1527(c)(2)(i); see also Edlund v. Massanari, 253 F.3d at 1157. At the time Dr. Tran rendered his opinion, plaintiff had been his patient for approximately two weeks. AR 309. The short duration of the relationship was a proper basis for giving limited weight to Dr. Tran's opinion.

The ALJ also stated that Dr. Tran's opinion was inconsistent with the objective evidence. AR 27. The ALJ offered the following example: "Dr. Tran noted that the claimant would not be able to perform any grasping with the right hand; however there is insufficient evidence to show that the claimant's right hand is impaired." Id.; see AR 311. Plaintiff concedes that "the ALJ was correct in pointing out that Dr. Tran's right hand limitations were not supported by the evidence." ECF. No. 16 at 15. Plaintiff contends, however, that Dr. Tran made a mistake in completing the form. Id. Plaintiff argues that Dr. Tran transposed the limitations and intended to state that plaintiff was limited in grasping with his left hand, not his right. Id. Plaintiff contends the mistake is obvious because Dr. Tran found that plaintiff suffered from left shoulder dislocation, but he opined that plaintiff could frequently use his left hand to

7

1  grasp but never use his right hand to grasp. Id.

2  The court disagrees. Plaintiff's argument overlooks the fact that Dr. Tran found
3  limitations to both of plaintiff's hands. See AR 311. For example, Dr. Tran opined that plaintiff
4  was limited to occasional fine manipulation in both hands. Id. Even assuming plaintiff is correct
5  that Dr. Tran accidently assessed plaintiff's left hand limitations under the section of the form
6  reserved for left hand limitations, the result would not change. It would still be Dr. Tran's
7  opinion that plaintiff had functional limitations to his right hand, which, as plaintiff concedes, is
8  not supported by the medical evidence.

9  Furthermore, Dr. Massih's contradictory opinion constitutes substantial evidence
10 supporting the ALJ's rejection of Dr. Tran's medical opinion. See Magallanes v. Bowen, 881
11 F.2d 747, 751 (9th Cir.1989) ("Where the opinion of the claimant's treating physician is
12 contradicted, and the opinion of a nontreating source is based on independent clinical findings
13 that differ from those of the treating physician, the opinion of the nontreating source may itself
14 be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."). As
15 part of his comprehensive orthopedic examination of plaintiff, Dr. Massih conducted
16 assessments to gauge plaintiff's coordination, motor strength, and range of motion of joints and
17 of the cervical and lumbar regions. AR 282-83. Since Dr. Massih's opinion was based on his
18 own independent clinical findings that differed from the objective findings identified by Dr.
19 Tran, Dr. Massih's opinion constituted substantial evidence supporting the ALJ's findings.
20 Accordingly, the ALJ provided legally sufficient reasons for rejecting Dr. Tran's opinion.

21  B.  The ALJ Offered Clear and Convincing Reasons for Rejecting Plaintiff's
22      Testimony Regarding His Functional Limitations.

23  Plaintiff also argues that the ALJ failed to provide clear and convincing reasons
24 for rejecting his testimony regarding his functional limitations. ECF No. 16 at 17-19. In
25 evaluating whether subjective complaints are credible, the ALJ should first consider objective
26 medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th

1 Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may
2 consider the nature of the symptoms alleged, including aggravating factors, medication,
3 treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the
4 applicant's
5 reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2)
6 unexplained or inadequately explained failure to seek treatment or to follow a prescribed course
7 of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th
8 Cir. 1996).  Work records, physician and third party testimony about the nature, severity and
9 effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.
10 Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an
11 allegedly debilitating medical problem may be a valid consideration by the ALJ in determining
12 whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v.
13 Sec'y of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own
14 observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
15 substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).
16 "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
17 reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.
18 Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

19       The ALJ properly rejected plaintiff's testimony, finding it not credible based on
20 plaintiff's failure to seek treatment for his musculoskeletal pain and paraspinal tenderness in
21 2009. AR 27.  The ALJ quoted the following language from plaintiff's physician's notes: "the
22 claimant 'refuses to go for physical therapy.  I advised him to go for OT/PT, however he keeps
23 repeating that he needs permanent disability.'"  Id.; see AR 357.  Plaintiff argues he refused to
24 follow the doctor's recommendation because the physical therapy sessions he had attended years
25 earlier were ineffective and caused him significant pain.  ECF No. 16 at 18-19.  This explanation
26 does not change the fact that plaintiff chose to disregard his physician's prescribed course of

treatment for an allegedly painful impairment. AR 27. Thus, the ALJ provided a clear and convincing reason for finding plaintiff's testimony regarding the severity of his symptoms not credible. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ further determined the objective medical evidence did not support plaintiff's allegations regarding the severity of his symptoms. For instance, the ALJ observed that plaintiff's claims of left shoulder impingement pain were inconsistent with the treating physician's opinion that the shoulder was improving, he had satisfactory range of motion, and an x-ray showing no acute abnormalities. AR 26. The ALJ also pointed to a 2007 x-ray of plaintiff's cervical spine deemed unremarkable by a hospital physician, and normal range of motion of plaintiff's cervical spine and lumbar spine, as evidence that his impairments were not as severe as alleged. AR 26. While these inconsistencies do not on their own constitute a clear and convincing reason for rejecting plaintiff's testimony, they bolster the ALJ's decision to reject plaintiff's testimony based on his failure to seek medical treatment–a clear and convincing reason unto itself. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

        C.        The ALJ Did Not Err in Evaluating the VE's Testimony.

Plaintiff argues the ALJ erred by failing to credit the VE's testimony in response to a hypothetical that accurately included plaintiff's functional limitations. ECF No. 16 at 20. In hypotheticals posed to a VE, the ALJ need only include those functional limitations he finds supported by the record. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).

Plaintiff's argument assumes the ALJ improperly rejected Dr. Tran's opinion and plaintiff's testimony regarding the severity of his musculoskeletal symptoms. As discussed above, the ALJ properly weighed the opinion evidence and provided clear and convincing reasons for rejecting plaintiff's testimony. Accordingly, the ALJ was not required to credit the VE's response to a hypothetical that included such limitations.

Plaintiff also maintains the ALJ erred by failing to ask the VE if his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). ECF No. 16 at 20. At plaintiff's hearing, the VE testified that based on the ALJ's RFC determination, plaintiff could perform work as an addresser, order clerk, and surveillance monitor. AR 50. The ALJ did not, however, ask the VE whether this testimony was consistent with the DOT. Under Social Security Ruling 00-4p, the ALJ has a duty to ask whether a VE's testimony is consistent with the DOT and to "obtain a reasonable explanation for any apparent conflict." Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007). But such a procedural error may be harmless if there is no actual or apparent conflict between the VE's testimony and the DOT. See id. at 1154 n.19. The party seeking to overturn an administrative agency's decision has the burden of showing that agency error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009).

Relying on Beltran v. Astrue, 700 F.3d 386 (9th Cir. 2012), plaintiff argues that the error was not harmless because there is only a small number of surveillance monitor jobs that plaintiff could perform. In Beltran, a VE expert testified that there were 135 regional jobs and 1,680 national jobs as a surveillance monitor that the plaintiff could perform based on the plaintiff's limitations. Id. at 390. The Ninth Circuit held that this was not a "significant number" of jobs to support the ALJ's finding that the plaintiff was not disabled. Id. at 389-90. That case, however, did not specifically address whether there was a conflict between the VE's testimony and the DOT. Beltran simply addressed whether the number of jobs identified by the VE constituted a "significant number" of jobs supporting the ALJ's decision. Id. Furthermore, the VE in this case testified that there were 5,000 surveillance monitor jobs in California that plaintiff could perform, significantly more than the 1,680 national jobs identified in Beltran. See AR 50. Here, the VE also testified that plaintiff could perform jobs as an addresser and order clerk. AR 50. Plaintiff does not allege any such conflict between these two other jobs and the DOT. Thus, plaintiff has failed to satisfy his burden of showing that the alleged legal error was prejudicial. Accordingly, the court finds that the ALJ's failure to inquire as to the possible

11

conflict between the VE's testimony and the DOT was harmless.  See Shinseki, 556 U.S. at 409-10.

IV. CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and is based on the proper legal standards.  Therefore, it is ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 16, is denied;

2. The Commissioner's cross-motion for summary judgment, ECF No. 18, is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: April 8, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE